**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-877** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **LT. SISLEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

**I.    Statement of Facts and of the Case**

    **A.    Dawn Marie Ball's Litigation History**

The plaintiff, Dawn Marie Ball, is a state prisoner and a prodigious federal court litigant.  Indeed, at present Ball has a total of sixteen lawsuits pending before this Court.[1]

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-846 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted.  The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the district court dismissed this civil action for failure to exhaust her administrative remedies,   <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 36), and on July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.)(Doc. 44)

On May 5, 2009, Ball filed a second civil action in the case of <u>Ball v. Hartman,</u> No. 1:09-CV-844 (M.D. Pa.).  This action was dismissed by the district court, which found Ball's complaint to be frivolous, <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36) and Ball's appeal of this dismissal order was summarily denied

---

CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.)

by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]  Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48)

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1).   On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).   That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). This appeal lacks any such basis.  As the District Court adequately

---

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted).  To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002).  Thus, we will dismiss this appeal

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se* complaint, which was filed on May 9, 2011, names 16 defendants and contains a hodgepodge of  allegations relating to the alleged confiscation of property by prison officials.(Doc. 1.)  These individual claims are diverse, disparate and span many years.  The complaint alleges that at these widely different times, various correctional staff wrongfully confiscated an array of items from Ball.

In its current form, Ball's complaint is flawed in several fundamental respects.  First, the complaint, which was filed in July 2011 asserts a series of factual averments relating to events which Ball alleges occur *in the future*.  For example, defendant Reitz is accused of refusing to surrender property in September of 2011, four months

4

after the complaint was filed. (Doc. 1)  Similarly, defendant George is alleged to have stolen a mailing label months after the filing of the complaint. (<u>Id</u>.)   Finally, defendants Edwards, Peterson, and Wilson are all alleged to have committed acts in the Fall of 2011 months after the filing of the complaint.

In addition to alleging events in the future, Ball made claims in this complaint about matters which are alleged to have occurred in the remote past, more than two years ago in January through March of 2009.  Ball levels such temporally remote claims against defendants Reitz, Robenolt, Peterson, and Kopshina. (<u>Id</u>.)  Thus, in Ball's July 2011 complaint some defendants are simultaneously accused of committing acts in the remote past, and in the future.

Beyond these temporal flaws, Ball's complaint names a series of supervisory defendants, but does not allege personal wrongdoing by these officials.  Instead, Ball simply asserts that these officials "failed to right a wrong." (<u>Id</u>.)  These supervisory defendants, who seem to be held liable by Ball based solely upon their supervisory status, include Superintendent Girow, Deputy Smith, and Major Bechdel. (<u>Id</u>.)

Further, Ball's complaint does not allege any facts which would permit the joinder of these disparate events, involving different actors, and distant times into a single civil complaint.

Finally, Ball asserts that in some instances she was provided post-deprivation relief from this confiscation in the form of administrative grievances, but Ball's complaint does not identify those instances where she was provided this due process protection.

Along with this complaint, Ball has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2)   For the reasons set forth below, this motion will be GRANTED, but as part of the Court's legally-mandated screening process it is recommended that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted, without prejudice to Ball attempting to cure the defects in her pleadings noted in this report and recommendation.

## II.   Discussion

### A.   Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.   Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a   prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.   Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).   As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."   Id. at 555.   "Factual allegations must be enough to raise a right to relief above the speculative level."   Id.   In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.   In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must

then determine whether the facts alleged in the complaint are sufficient to   show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this complaint, in its present form, is subject to summary dismissal.

**B.** **Ball's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law**

Judged against these standards, Ball's current *pro se* complaint is clearly inadequate to state a claim upon which relief can be granted. Indeed, in its present form, the complaint is flawed in the following fundamental respects:

**1.** **Many of the Allegations In the Complaint Relate to Events in The Future and Do Not State a Plausible Claim for Relief as Written**

At the outset, as presently drafted Ball's complaint violates the basic rule of pleading which requires that "a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. Here, in its current form, Ball's complaint is replete with allegations which are not only implausible, they are impossible. Specifically, to the extent that Ball's July 2011 complaint purports to describe events that she identifies as happening in the future, in the Fall of 2011, Ball seeks relief for events that she places months in the future, something which is plainly impossible. This failure to articulate in the complaint a plausible basis for holding these defendants accountable

for some violation of the constitution requires dismissal of these Defendants, cited by Ball with committing acts which allegedly occurred *after* the filing of the complaint–something which is plainly impossible. See Thomas v. Conway, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).

### 2. Some of Ball's Claims Are Also Time-Barred

In addition to reciting events which are alleged to have occurred in the future, Ball's May 2011 complaint is also deficient because it brings claims that are so old that they are barred by the statute of limitations. When conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is

required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008); see also Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

Applying these standards, we find that a number of the allegations in this *pro se* complaint are clearly subject to dismissal on statute of limitations grounds. Specifically, this complaint, which alleges misconduct by government actors beginning in January of 2009 was first filed on May 9, 2011. Therefore, with respect to those events which are alleged to have occurred prior to May 2009, the complaint is simply time-barred by the two-year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury

that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F.2d 356, 360 (3d Cir. 1986)).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2)

frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Ball complains, in part, about confiscation of property in January through March 2009.  To the extent that these actions entailed a violation of the plaintiff's constitutional rights, that violation would have been apparent when they first occurred, and would have long ago had a degree of permanence which should have triggered the plaintiff's awareness of her duty to assert her rights.  Thus, in this case a straightforward application of the two-year statute of limitations also compels dismissal of some of these claims as untimely.

### 3.   **Ball Has Failed to State Any Claims Against Prison Supervisors**.

Furthermore, Ball's complaint names three senior supervisory prison officials as defendants, but is bereft of any factual allegations regarding misconduct by these defendants beyond an assertion that the defendants "failed to right a wrong."  This is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation

cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's

liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates sustain claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>See</u> <u>Jones</u>, 433 U.S. at 137-138; <u>Speight v. Sims</u>, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's

grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).   See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").  As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause).

> Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Ball's claims against the supervisory prison defendants named in his complaint consist of little more than assertions of *respondeat*

18

*superior* liability, coupled with apparent but unarticulated dissatisfaction with their processing of this inmate's past grievances, assertions which as a matter of law do not suffice to state a constitutional tort claim.  Therefore, these defendants are entitled to be dismissed from this case.

**4.      Ball's Disparate Claims Are Not Properly Joined in a Single Complaint**

This complaint is further flawed in another respect.  In her complaint, Ball collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times.  The joinder of these plainly divergent claims in a single lawsuit is inappropriate under the rules governing joinder of defendants in federal litigation.  Those rules provide, in part, that:

> Person[s] . . . may be joined in one action as defendants if:
>
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences*; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

F. R.Civ. Pro., Rule 20(a)(2)(emphasis added).

In this case, it cannot be said from Ball's complaint that these allegations arise out of the same transaction, occurrence or series of transactions or occurrences.  Quite the contrary, Ball's complaint seems to amass an array disparate acts, allegedly

committed by different actors at divergent times and places. "[G]iven the hodgepodge of claims raised in the original complaint," Boretsky v. Governor of New Jersey, No.08-3313, 2011 WL 2036440, *3 (3d Cir. May 25, 2011), this court may properly, in the exercise of its discretion, dismiss this complaint, and require Ball to file separate complaints relating to these factually distinct claims. (Id.)

### 5.  Ball Has Not Clearly Articulated a Due Process Claim Involving Confiscation of Her Property

Finally, our initial screening review of this complaint reveals another substantive flaw in this pleading.  The gravamen of Ball's various claims seems to be that prison officials confiscated her property without due process.  However, Ball's complaint contains factual recitals which may rebut some or all of these due process claims.  Inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See Id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, a crucial component to any inmate due process claim in this setting is an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. In this case, liberally construed, Ball's complaint alleges that her property was taken without due process. However, Ball's complaint also alleges that in many instances she availed herself of post-deprivation remedies to challenge these confiscations, filing administrative grievances. Since "an unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984), these facts recited by Ball in her complaint would rebut and defeat a due process claim. Because Ball does not distinguish in her complaint which of these episodes involved instances in which a post-deprivation remedy was afforded to the plaintiff, it is impossible on the record before us to determine which of Ball's alleged complaints may state a claim upon which relief can be granted. However, Ball's assertion that she was provided such post-deprivation remedies plainly defeats many of these claims and undermines the legal viability of this complaint.

### C.    Ball's Complaint Should be Dismissed Without Prejudice

In sum, in its current form Ball's complaint combines factually impossible claims with time-barred allegations. The complaint then joins disparate acts by

diverse actors into a single complaint, and improperly seeks to hold supervisory personnel liable for the alleged acts of their subordinates on a *respondeat superior* theory of liability. The complaint goes on to allege that Ball's property was taken without due process, while simultaneously asserting that she was provided post-deprivation relief in some instances through administrative grievances, a fact which would defeat a due process claim in this institutional setting. Given these cascading deficiencies, Ball 's complaint fails to state a claim upon which relief can be granted.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Ball be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this

time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 2), but that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the defendant acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of October, 2011.

                                        ***S/Martin C.  Carlson***_____
                                        Martin C. Carlson
                                        United States Magistrate Judge