**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-877** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **LT. SISLEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.      **Statement of Facts and of the Case**

A.      **Dawn Marie Ball's Litigation History**

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit

at the State Correctional Institution (SCI) Muncy, who by her own account suffers

from a cascading array of severe mental illnesses, and who, in other litigation before

this Court, candidly acknowledges that she is profoundly disturbed, informing the

Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my
> hands till they bleed, confusion, PTSD, disassociative disorder, I smell,
> see and hear things not there, severely stressed, phobias, agoraphobia,
> severe anxiety, lack of interest in things, lack of arousal in things, racing
> thoughts, suicidal, cognitive problems and disorders, lack of interest in

1

life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Ball is also an inmate who is alleged to engage in destructive, self-defeating and senseless behavior.  Ball's penchant for such behavior is aptly illustrated by a document which she has attached to her latest amended complaint in this case, a memorandum from prison officials to Ball in which prison staff explain that they cannot document some property losses claimed by Ball because:

[Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Doc. 27, p.13)

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has a total of nineteen lawsuits pending before this court.[1]  Ball has also been a prodigiously unsuccessful litigant, who has had at least

_____

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.);Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden, No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561

three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted. See, e.g., Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.); Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.);  Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.); Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

### B.   Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se* complaint, which was first filed on May 9, 2011, originally named 16 defendants and contains a hodgepodge of allegations relating to the alleged confiscation of property by prison officials. (Doc. 1)  These individual claims were diverse, disparate and spanned many years.  The complaint alleged that at these widely different times, various correctional staff wrongfully confiscated an array of items from Ball.

In its initial form, we found that Ball's complaint was flawed in several fundamental respects.  First, the complaint, which was filed in July 2011 asserted a

---

(M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.).

series of factual averments relating to events which Ball alleged occur *in the future*. For example, defendant Reitz was accused of refusing to surrender property in September of 2011, four months after the complaint was filed. (Doc. 1)  Similarly, defendant George was alleged to have stolen a mailing label months after the filing of the complaint. (Id.)  Finally, defendants Edwards, Peterson, and Wilson were all alleged to have committed acts in the Fall of 2011, months after the filing of the complaint.  In addition to alleging events in the future, Ball made claims in this complaint about matters which were alleged to have occurred in the remote past, more than two years ago in January through March of 2009.  Ball leveled such temporally remote claims against defendants Reitz, Robenolt, Peterson, and Kopshina. (Id.) Thus, in Ball's July 2011 complaint some defendants were simultaneously accused of committing acts in the remote past, and in the future.

Ball's initial complaint also named a series of supervisory defendants, but did not allege personal wrongdoing by these officials.  Instead, Ball simply asserted that these officials "failed to right a wrong." (Id.)  Further, Ball's initial complaint did not allege any facts which would permit the joinder of these disparate events, involving different actors, and distant times into a single civil complaint.  Finally, Ball asserted that in some instances she was provided post-deprivation relief from this confiscation in the form of administrative grievances, but Ball's complaint did not identify those

instances where she was provided this due process protection.   Citing these shortcomings, on October 11, 2011, we recommended as part of the Court's legally-mandated screening process that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted, without prejudice to Ball attempting to cure the defects in her pleadings noted in this report and recommendation. (Doc. 16)

Ball has now filed an amended complaint, (Doc. 27), which attempts to address some of the flaws cited by the Court in its October 11, 2011, report and recommendation, but exposes new and fundamental flaws in this case.  Ball amended complaint, (Doc. 27), in an 84-page document, and it is also something of a misnomer. In fact, the amended complaint is not one complaint, but appears to be two separate, and wholly unrelated documents.  Thus, the first 27 pages of this amended complaint appear to consist of a complaint against 15 correctional officials involving allegations relating to lost property. (Doc. 27, pp. 1-27)   Along with these allegations, Ball provides copies of prison records which rebut her claims and show that she was provided meaningful post-deprivation relief by the prison and actually was reimbursed for much of this lost property. (Id.)

For example, one of the principal allegations set forth in this portion of Ball's amended complaint is that prison officials misplaced several boxes of documents in

the course of an attempted transfer of Ball to SCI Cambridge Springs in the Fall of 2010.  With respect to this allegation, which forms the basis of Ball's claims against six defendants,[2] Ball attaches to her complaint paperwork from the prison which reveals that she received meaningful post-deprivation relief on these property claims. (Id., p. 13.)  Indeed, that paperwork reflects that staff agreed with some of Ball's complaints, and upheld her property loss claim in the amount of $144.69. (Id.)  This exhibit to Ball's complaint not only refutes the allegations of unconstitutional property deprivation, it also provides a telling insight into the challenges which responding to such allegations from the plaintiff present for prison officials, who were compelled to explain to Ball that they could not fully document her loss claims because:

> [Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Doc. 27, p.13)

While the first 27 pages of Ball's December 2, 2011, amended complaint advanced these claims, the following 56 pages of this document appear to contain a new, different and entirely separate civil complaint, which names different defendants

---

[2]Defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage are named by the plaintiff in her amended complaint in connection with this specific incident. (Doc. 27, p.3)

than those identified in the amended complaint set forth in the first 27 pages of this pleading and makes different factual averments against these new defendants relating to obstruction of the mails. Compare, Doc. 27, pp.1-27 with Doc. 27, pp. 28-84.  Thus Ball's December 2, 2011, amended complaint is, in reality, two different draft civil complaints, neither of which seems related to the other.

Along with this amended complaint, Ball has filed a motion for leave to proceed *in forma pauperis*. (Doc. 28)  For the reasons set forth below, this motion will be GRANTED, but as part of the court's legally-mandated screening process it is recommended that this amended complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted.  It is further recommended that the loss of property claims set forth against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage, relating to allegations that the defendants misplaced several boxes of documents in the course of an attempted transfer of Ball to SCI Cambridge Springs in the Fall of 2010, be dismissed with prejudice since Ball's latest amended complaint conclusively shows that the plaintiff was provided meaningful post-deprivation relief with respect to this property loss claim.  As for the remaining allegations in this pleading, which are set forth in two different documents, each styled as a amended complaint, these allegations should be dismissed without prejudice to providing  Ball one final opportunity to attempt to cure the defects in her pleadings

noted in this report and recommendation by filing a single, coherent amended complaint.

## II.   Discussion

### A.   Screening of *Pro Se* Prisoner Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,</u> 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>  In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); see also Sands v. McCormick, 502 F.3d

263, 268 (3d Cir. 2007). Thus, we may consider the exhibits which Ball has appended to this amended complaint in assessing whether it states a constitutional claim.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this amended complaint, in its present form, is subject to summary dismissal.

**B.**   **Ball's Current Amended Complaint Fails to Meet the Pleading Standards Prescribed by Law**

Judged against these standards, Ball's current *pro se* amended complaint still fails to state a claim upon which relief can be granted.  Indeed, in its present form, the amended complaint remains  flawed in the following fundamental respects:

### 1.   Ball's Amended Complaint Violates Rules 8 and 20.

At the outset, as presently drafted Ball's amended complaint violates the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a 'plausible claim for relief.'   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11.  Furthermore, dismissal of this amended complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

It is well-settled that: "[t]he  Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)." Scibelli v. Lebanon County, 219 F. App'x 221, 222

(3d Cir. 2007). Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).[3]

Here, as a threshold matter we find that Ball's amended complaint is, in reality two complaints, each of which is unrelated to the other. Ball provides no explanation for this convoluted style of pleading, which conjoins two separate complaints in a single document. Nor does she explain how we are to construe this curious pleading.

_____

[3]In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects. In such instances, the failure to timely submit a proper amended complaint that complies with the strictures of Rule 8 may then warrant the dismissal of the complaint with prejudice. See, e.g., Mincy v. Klem, 303 F.App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F.App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra; Scibelli v. Lebanon County, supra;

Therefore, we find that Ball's efforts to conflate two separate civil complaints into one document are, by definition, inconsistent with the guiding principle that a civil complaint should be a short and plain statement of a cause of action.

Moreover, Ball's apparent acknowledgment in her pleading that these two sets of allegations, and defendants, are separate and distinct raises another flaw in this pleading. This amended complaint collects a series of distinct claims, involving diverse parties, and disparate acts which are alleged to have occurred at different times. The joinder of these plainly divergent claims in a single lawsuit is inappropriate under the rules governing joinder of defendants in federal litigation. Those rules provide, in part, that:

> Person[s] . . . may be joined in one action as defendants if:
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions or occurrences*; and
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R.Civ. P. 20(a)(2)(emphasis added).

In this case, it cannot be said from Ball's amended complaint that these allegations arise out of the same transaction, occurrence or series of transactions or occurrences. Quite the contrary, Ball's complaint seems to define these transactions as somehow separate, and then attempts to amass an array disparate acts, allegedly committed by

different actors at divergent times and places. "[G]iven the hodgepodge of claims raised in the . . .complaint," <u>Boretsky v. Governor of New Jersey</u>, No.08-3313, 2011 WL 2036440, \*3 (3d Cir. May 25, 2011), this Court may properly, in the exercise of its discretion, dismiss this amended complaint, and require Ball to file separate complaints relating to these factually distinct claims. (<u>Id</u>.)

### 2**.**     **Ball's Due Process Claim Involving Confiscation of Her Property Fails As a Matter of Law**

Further, our initial screening review of this amended complaint reveals another substantive flaw in this pleading.  The gravamen of many of Ball's claims seems to be that prison officials confiscated her property without due process when they lost several boxes of Ball's documents during a 2010 prison transfer.  However, Ball's amended complaint then contains factual recitals which rebut these due process claims.

Inmate due process claims arising out of the confiscation of property are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." <u>Hudson v. Palmer</u>, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-

deprivation notice is not constitutionally required. <u>See id.</u>

<u>Monroe v. Beard</u>, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, a crucial component to any inmate due process claim in this setting is an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy.  Therefore, where an inmate is afforded a meaningful post-deprivation due process remedy, an inmate's constitutional complaints regarding loss or taking of property typically fail. <u>See, e.g.</u>, <u>Watson v. Secretary, Dep't of Corrections</u>, 436 F.App'x 131, 135 (3d Cir. 2011); <u>Bowens v. United States Dep't of Justice</u>, 415 F.App'x 340, 344 (3d Cir. 2011).

These settled legal tenets are fatal to any property confiscation due process claims made by Ball against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage relating to the loss of some of her property by prison officials during her attempted transfer to SCI Cambridge Springs in the Fall of 2010.  With respect to this allegation, which forms the basis of Ball's claims against these defendants, Ball now attaches to her amended complaint paperwork from the prison which reveals that she received meaningful post-deprivation relief on these property claims. (<u>Id</u>., p. 13.) Indeed, that paperwork reflects that staff agreed with some of Ball's complaints, and upheld her property loss claim in the amount of $144.69. (<u>Id</u>.)  This exhibit to Ball's

amended complaint not only refutes the allegations of unconstitutional property deprivation without due process, it provides a unique insight into the extraordinary challenges which the plaintiff's actions present for prison officials, who were compelled to explain to Ball that they could not fully document her loss claims because:

> [Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Doc. 27, p.13)

In sum, as to these defendants and this due process claim arising out of the loss of some of Ball's property, consideration of "the allegations contained in the complaint, [and] exhibits attached to the complaint," Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), reveals that a post-deprivation remedy existed for Ball, and that Ball successfully took advantage of that remedy. Therefore, on these facts, recited by Ball in her latest amended pleading, the plaintiff cannot maintain a due process claim against these defendants. Watson v. Secretary, Dep't of Corrections, 436 F. App'x 131, 135 (3d Cir. 2011). Accordingly, this due process claim should be dismissed.[4]

---

[4]Further, to the extent that Ball's amended complaint invites us to reassess the value of this property, which prison officials valued at $144.69, and mediate

Finally, even if Ball had stated a colorable constitutional claim relating to the loss of these property items, a loss which the prison reimbursed, defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage are nevertheless entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States.   Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, —U.S.—, 129 S. Ct. 808, 815 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S.

---

the prison's assertion to Ball that "by spreading feces and urine combined with paper products from your property and cell related property [you] made it impossible to identify your missing property item by item as you submit," (Doc. 27, p.13), she misconstrues both the reach of the constitution and the role of the courts.  As a constitutional due process claim relating to replacement of lost inmate property, we are only concerned with identifying whether Ball's complaints received a meaningful post-deprivation review in the prison, which plainly is the case here since Ball was reimbursed $144.69 for lost property. It is not the task of the federal courts to determine if Ball is entitled to additional compensation for what prison official describe as urine and fecal-stained papers.

Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 129 S. Ct. at 815.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances

would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 129 S. Ct. at 820, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. <u>Id.</u>  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. <u>Gruenke v. Seip</u>, 225

F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved as a matter of law. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by a difficult, obstreperous inmate bringing a due process claim relating to loss of property, whose own alleged "destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit." (Doc. 27, p.13)  On these facts, prison officials could not reasonably have anticipated that reimbursing Ball $144.69 to replace property that she claimed was destroyed would violate some clearly established constitutional right of the plaintiff.  In short, given the state of the law in this field, in this setting the defendants simply could not have recognized that their actions would violate "clearly established statutory or constitutional right[] of which

a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, the defendants are entitled to qualified immunity on this claim.[5]

Having conducted this screening analysis and determined that Ball's amended complaint is still wanting with respect to this due process claim against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage in this case the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause of action against these prison officials, and actually repeats assertions that were previously found  to be legally insufficient. Since the plaintiff has been afforded ample opportunity to correct the deficiencies identified in his prior complaint with respect to these defendants, has

---

[5]In appropriate cases this Court is entitled to address this qualified immunity defense *sua sponte*, when appropriate. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that she has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Therefore it is recommended that the amended complaint (Doc. 27) be dismissed without further leave to amend as to any due process claims against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage.

As for the remaining claims set forth in this amended complaint, which violate Rule 8's injunction that a complaint should contain a short and plain statement of a cause of action, while our screening analysis calls for dismissal of this action in its current form, we recommend that Ball be given another, final opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint.  We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   Accordingly, it is recommended that the Court provide the plaintiff with a final opportunity to correct

these deficiencies in the *pro se* complaint, by dismissing this deficient amended complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1.   The Plaintiff's amended complaint should be dismissed with prejudice as to any due process claims against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage.

2.   In all other respects, the Plaintiff's amended complaint should be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the Plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of December 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge