IN THE  UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-877** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **LT. SISLEY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

####     A.      Dawn Marie Ball's Litigation History

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).   Ball is also an inmate who is alleged to engage in destructive, self-defeating and senseless behavior. Ball's penchant for such behavior is aptly illustrated by a document which she has attached to her latest amended complaint in this case, a memorandum from prison officials to Ball in which prison staff explain that they cannot document some property losses claimed by Ball because:

1

> [Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Doc. 27, p.13.)

While she suffers from paranoia, schizophrenia, and experiences visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has more than 25 lawsuits lodged with this Court.[1] Ball has also been a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

2

could be granted. <u>See, e.g.</u>, <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.); <u>Ball v. Hartman</u>, No. 1:09-CV-844 (M.D. Pa.); <u>Ball v. Butts</u>, No. 1:11-CV-1068, (M.D.Pa.); <u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.   <u>Ball's Current Lawsuit</u>

It is against this backdrop that Ball instituted the current lawsuit.  Ball's *pro se* complaint, which was first filed on May 9, 2011, originally named 16 defendants and contains a hodgepodge of allegations relating to the alleged confiscation of property by prison officials.  (Doc. 1.)  These individual claims were diverse, disparate and spanned many years.  The complaint alleged that at these widely different times, various correctional staff wrongfully confiscated an array of items from Ball.

In its initial form, we found that Ball's complaint was flawed in several fundamental respects.  First, the complaint, which was filed in July 2011 asserted a series of factual averments relating to events which Ball alleged occur *in the future*.  For example, defendant Reitz was accused of refusing to surrender property in September of 2011, four months after the complaint was filed.  (Doc. 1.)  Similarly, defendant George was alleged to have stolen a mailing label months after the filing of the complaint.  (<u>Id</u>.)  Finally, defendants Edwards, Peterson, and Wilson were all alleged to have committed acts in the fall of 2011, months after the filing of the

complaint.  In addition to alleging events in the future, Ball made claims in this complaint about matters which were alleged to have occurred in the remote past, more than two years ago in January through March of 2009.  Ball leveled such temporally remote claims against defendants Reitz, Robenolt, Peterson, and Kopshina. (Id.) Thus, in Ball's July 2011 complaint some defendants were simultaneously accused of committing acts in the remote past, and in the future.

Ball's initial complaint also named a series of supervisory defendants, but did not allege personal wrongdoing by these officials.  Instead, Ball simply asserted that these officials "failed to right a wrong." (Id.)  Further, Ball's initial complaint did not allege any facts which would permit the joinder of these disparate events, involving different actors, and distant times into a single civil complaint.  Finally, Ball asserted that in some instances she was provided post-deprivation relief from this confiscation in the form of administrative grievances, but Ball's complaint did not identify those instances where she was provided this due process protection.  Citing these shortcomings, on October 11, 2011, we recommended as part of the court's legally-mandated screening process that this complaint, in its current form, be dismissed for failure to state a claim upon which relief can be granted, without prejudice to Ball attempting to cure the defects in her pleadings noted in this report and recommendation. (Doc. 16.)

In December 2011, Ball filed an amended complaint, (Doc. 27.), which attempted to address some of the flaws cited by the Court in its October 11, 2011, report and recommendation, but exposed new and fundamental flaws in this case. Ball's amended complaint, (Doc. 27.), was an 84-page document, and was also something of a misnomer.  In fact, the amended complaint was not one complaint, but appeared to be two separate, and wholly unrelated documents.  Thus, the first 27 pages of this amended complaint appeared to consist of a complaint against 15 correctional officials involving allegations relating to lost property. (Doc. 27, pp. 1-27.)  Along with these allegations, Ball provided copies of prison records which rebutted her claims and showed that she was provided meaningful post-deprivation relief by the prison and actually was reimbursed for much of this lost property.  (Id.)

For example, one of the principal allegations set forth in this portion of Ball's amended complaint was that prison officials misplaced several boxes of documents in the course of an attempted transfer of Ball to SCI Cambridge Springs in the fall of 2010.  With respect to this allegation, which formed the basis of Ball's claims against six defendants,[2] Ball attached to her complaint paperwork from the prison which revealed that she received meaningful post-deprivation relief on these property

[2]Defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage were named by the plaintiff in her amended complaint in connection with this specific incident. (Doc. 27, p.3.)

claims.  (Id., p. 13.)  Indeed, that paperwork reflected that staff agreed with some of Ball's complaints, and upheld her property loss claim in the amount of $144.69. (Id.) This exhibit to Ball's complaint not only refuted the allegations of unconstitutional property deprivation, it also provided a telling insight into the challenges which responding to such allegations from the plaintiff present for prison officials, who were compelled to explain to Ball that they could not fully document her loss claims because:

> [Y]our destruction of multiple cells . . . by spreading feces and urine combined with paper products from your property and cell related property made it impossible to identify your missing property item by item as you submit.

(Doc. 27, p.13.)

While the first 27 pages of Ball's December 2, 2011, amended complaint advanced these claims, the following 56 pages of this document appeared to contain a new, different and entirely separate civil complaint, which named different defendants than those identified in the amended complaint set forth in the first 27 pages of this pleading and made different factual averments against these new defendants relating to obstruction of the mails.  Compare, Doc. 27, pp.1-27 with Doc. 27, pp. 28-84.  Thus Ball's December 2, 2011, amended complaint was, in reality, two different draft civil complaints, neither of which seems related to the other.

6

Along with this amended complaint, Ball filed a motion for leave to proceed *in forma pauperis*. (Doc. 28.) On December 20, 2011, as part of the court's legally-mandated screening process, we recommended that this amended complaint be dismissed for failure to state a claim upon which relief can be granted. It was further recommended that the loss of property claims set forth against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage, relating to allegations that the defendants misplaced several boxes of documents in the course of an attempted transfer of Ball to SCI Cambridge Springs in the fall of 2010, be dismissed with prejudice since Ball's latest amended complaint conclusively showed that the plaintiff was provided meaningful post-deprivation relief with respect to this property loss claim. As for the remaining allegations in this pleading, which were set forth in two different documents, each styled as a amended complaint, it was recommended that these allegations should be dismissed without prejudice to providing Ball one final opportunity to attempt to cure the defects in her pleadings noted in this report and recommendation by filing a single, coherent amended complaint. (Doc. 31.)

This report and recommendation was adopted by the district court on May 22, 2012. (Doc. 51.) That order then instructed Ball in clear and precise terms as follows:

**ACCORDINGLY**, on this 22nd day of May 2012, **IT IS HEREBY**

> **ORDERED THAT** the Report and Recommendation (Doc. No. 31) is
> **ADOPTED**, the amended complaint (Doc. No. 27) is **DISMISSED**
> **WITH PREJUDICE** as to all due process claims against Defendants
> Giroux, Bechdel, Hummel, Edwards, Sisley and Savage and
> **DISMISSED WITHOUT PREJUDICE** to Plaintiff endeavoring to
> correct any remaining defects cited in the amended complaint *within*
> *twenty days of the date of this order.*

(Id.)(emphasis added).

Ball has not complied with this twenty-day deadline in which to file an amended complaint.  Instead, on May 15, 2012, Ball sought to stay all of her multi-faceted federal court litigation, in an apparent effort to delay or avoid rulings in these cases on many ripe defense motions.  (Doc. 118.)  On May 15, 2012, we denied this request made by Ball, noting that there was something profoundly inconsistent in these pleadings, since Ball's motions began with factual averments which detailed a series of allegedly improper actions by prison officials, allegations which if true required immediate attention by the courts.  (Doc. 118.)  Yet, while Ball recited facts which cried out for action by the courts, she sought relief which would not be in her interests, or in the interests of justice, a complete cessation of this litigation. (Id.) Because we believed that we owed it to Ball, and to all of the many defendants she has sued, to promptly address the merits of her claims, on May 15, 2012, we denied Ball's first motions to generally stay all of Ball's litigation to some future date of her choosing.  Instead, we instructed Ball in clear and precise terms as follows:

8

> In the meanwhile Ball is directed to continue to comply with the filing
> deadlines previously set by this court and IT IS ORDERED that any
> future requests for continuance or stay must be made individually by
> Ball in each of her cases along with factual averments specific to each
> particular case explaining why a stay or continuance is necessary.

(Id.)

Presented with this clear instruction from the Court, Ball then chose to ignore this guidance and filed another global stay request in all of her cases. (Doc. 122.) Indeed, in this second stay motion Ball endeavored not only to ignore the Court's prior order, but to try to ignore the Court altogether by instructing the clerk's office to present these latest stay motions to another judge. (Id.) Furthermore, Ball's motion sought more than a stay of future litigation, she also demanded that all orders in all of her cases entered since April 2012, be "revoked." (Id.) We denied this second stay motion as well, (Doc. 124.), and Ball allowed her filing deadline for submission of an amended complaint to lapse without any action on her part to cure these serious defects in her pleadings. Thus, we are currently presented with a deeply flawed complaint submitted by a plaintiff who refuses to correct this pleading and has ignored Court-ordered deadlines.

On these facts, it is recommended that the complaint now be dismissed with prejudice.

## II.   <u>Discussion</u>

This Court has an ongoing statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.  Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel,</u>

<u>Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

<u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally

a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of</u>

<u>Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal,</u> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id</u>."  <u>Santiago v. Warminster Tp.</u>, 629

F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

In this case, having previously conducted this screening analysis, we determined that Ball's amended complaint was wanting with respect to this due process claim against defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage. With respect to defendants Giroux, Bechdel, Hummel, Edwards, Sisley and Savage, this Court had previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. The amended complaint still failed to state a viable civil rights cause of action against these prison officials, and actually repeated

14

assertions that were previously found  to be legally insufficient.  Since the plaintiff had been afforded ample opportunity to correct the deficiencies identified in her prior complaint with respect to these defendants, had failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint made it clear that she had no right to relief, the Court found that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004), and these claims in the amended complaint (Doc. 27.) were dismissed without further leave to amend.

As for the remaining claims set forth in this amended complaint, which violated Rule 8's injunction that a complaint should contain a short and plain statement of a cause of action, while our screening analysis called for dismissal of this action the Court provided Ball another, final opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint.  Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we followed this course recognizing that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).

Thus, in this case, Ball was given this opportunity to further amend her complaint, but has now forfeited this opportunity through her inaction. In this situation, where a wholly deficient complaint is dismissed without prejudice but the *pro se* plaintiff refuses to timely amend the complaint, it is well within the Court's discretion to dismiss the complaint with prejudice given the plaintiff's refusal to comply with court directives. Indeed, the precise course was endorsed by the United States Court of Appeals for the Third Circuit in <u>Pruden v. SCI Camp Hill</u>, 252 F. App'x 436, 438 (3d Cir. 2007). In <u>Pruden</u>, the appellate court addressed how district judges should exercise discretion when a *pro se* plaintiff ignores instructions to amend a complaint. In terms that are equally applicable here the court observed that:

> The District Court dismissed the complaint without prejudice and allowed [the *pro se* plaintiff] twenty days in which to file an amended complaint. [The *pro se* plaintiff] failed to do so. Because [the *pro se* plaintiff] decided not to amend his complaint in accordance with the Federal Rules of Civil Procedure, we conclude that the District Court did not abuse its discretion when it dismissed [the *pro se* plaintiff's] complaint with prejudice. <u>See</u> <u>In re Westinghouse Securities Litigation</u>, 90 F.3d 696, 704 (3d Cir.1996). The District Court expressly warned [the *pro se* plaintiff] that the failure to amend his complaint would result in dismissal of the action with prejudice. "[I]t is difficult to conceive of what other course the court could have followed." <u>Id.</u> (quoting <u>Spain v. Gallegos</u>, 26 F.3d 439, 455 (3d Cir.1994)).

<u>Pruden v. SCI Camp Hill</u>, 252 F. App'x 436, 438 (3d Cir. 2007).

Therefore, it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

### III.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed as frivolous for failure to state a claim with prejudice and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of July  2012.

*<u>__S/Martin C.  Carlson__</u>*
Martin C. Carlson
United States Magistrate Judge